FILED

NOT FOR PUBLICATION

MAY 20 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CONSERVATION CONGRESS, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> UNITED STATES FOREST SERVICE, <br><br> Defendant-Appellee. | No. 18-17165 <br><br> D.C. No. 2:18-cv-02404-JAM-CKD <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted May 14, 2019
Portland, Oregon

Before: N.R. SMITH, WATFORD, and R. NELSON, Circuit Judges.

Conservation Congress appeals the district court's denial of its motion for a preliminary injunction to stay the United States Forest Service's (USFS) project to harvest timber burned in a forest fire (Project). We have jurisdiction under 28 U.S.C. § 1292, and we affirm.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

The district court did not abuse its discretion in denying Conservation Congress's motion for a preliminary injunction. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). A district court abuses its discretion only if its decision was based "on an erroneous legal standard or clearly erroneous findings of fact." *Lands Council v. McNair*, 537 F.3d 981, 986 (9th Cir. 2008) (en banc) (citation omitted), *overruled on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

To obtain a preliminary injunction, the moving party must show all four of the following: (1) that it "is likely to succeed on the merits"; (2) that it is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in [its] favor"; and (4) "that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "When the government is a party, [the] last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

**1.** The district court did not abuse its discretion in determining that Conservation Congress failed to demonstrate that it was likely to succeed on the merits of its claims.

**A.** As to an alleged violation of the National Forest Management Act (NFMA), 16 U.S.C. § 1604, for failing to comply with forest plan standards and

guidelines regarding the Northern Goshawk, the Modoc sucker, and their respective habitats:[1] The NFMA requires that "[r]esource plans and permits, contracts, and other instruments for the use and occupancy of National Forest System lands . . . be consistent with the land management plans." 16 U.S.C. § 1604(i). It is undisputed that the Project is subject to the Modoc National Forest Land and Resource Management Plan (LRMP). The Project is also subject to at least some provisions of the Sierra Nevada Forest Plan (SNFP).

To the extent that the USFS has failed to comply with LRMP provisions requiring a certain number of nest territories, nest stands, or acreage for each nest stand,[2] the record indicates that the fire—and not the Project itself—caused the non-compliance. The fire destroyed two of the three Northern Goshawk Protected Activity Centers (PACs), and the USFS is merely responding to that destruction.

---

[1] While Conservation Congress invokes the Administrative Procedure Act (APA) in each of its claims, it does not argue any APA-specific violations. Accordingly, we treat the APA references as merely the mechanism by which Conservation Congress asserts its claims under the NFMA and the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321. *See Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984).

[2] *See, e.g.*, sections 4-12, 4-26(2)(A), 4-91(1) & (2).

As to the remaining LRMP provisions:[3] each of these are merely guidelines directing the USFS to mitigate impacts or take certain action "as opportunities arise." In other words, the USFS has discretion to implement them as it deems appropriate. *Lands Council*, 537 F.3d at 993 ("[O]ur law . . . requires us to defer to an agency's determination in an area involving a 'high level of technical expertise.'" (citation omitted)). Accordingly, the USFS's alleged failure to apply these provisions as Conservation Congress wishes is not a violation of the NFMA.

As to the SNFP: section 34 does not require the USFS to conduct more than the two surveys Conservation Congress concedes were conducted. Even so, the USFS conducted a third survey before granting final approval for the Project.

**B.** As to the claims that the USFS violated NEPA by failing to adequately consider every relevant impact to the Northern Goshawk, the Modoc sucker, and their respective habitats: "Through the NEPA process, federal agencies must carefully consider detailed information concerning significant environmental impacts, but they are not required to do the impractical. Alternatively phrased, the task is to ensure that the agency has taken a 'hard look' at the potential environmental consequences of the proposed action." *Klamath-Siskiyou Wildlands*

---

[3]*See, e.g.*, sections 4-86(2)(b) & (c), 4-86(4), 4-91(3), 4-186, and appendix M-1.

*Ctr. v. Bureau of Land Mgmt.*, 387 F.3d 989, 992–93 (9th Cir. 2004) (internal citations, alterations, and quotation marks omitted). "Although an agency's actions under NEPA are subject to careful judicial scrutiny, courts must also be mindful to defer to agency expertise, particularly with respect to scientific matters within the purview of the agency." *Id.* at 993.

Here, the USFS concluded that "the Modoc sucker would not be [a]ffected by the proposed project," because the Modoc sucker riparian area is outside the Project area, is in a different subwatershed than most of the Project, and is "essentially disconnected" from any possible tributaries within the Project area. The USFS had a project map and a hydrology report that included a map of the subwatersheds before it when it made this scientific determination, and the agency's conclusion is entitled to deference. *United States v. Alpine Land & Reservoir Co.*, 887 F.2d 207, 213 (9th Cir. 1989). Conservation Congress has not shown how additional mapping, surveying, grazing analysis, or sediment transportation analysis would have any effect on the USFS's conclusion. Thus, Conservation Congress has not demonstrated a likelihood of success on its Modoc sucker NEPA claims.

The USFS likewise determined that the Project would not have a significant impact on the Northern Goshawk. The record shows that USFS conducted three

5

surveys of the Northern Goshawks PACs within the Project area. It also evaluated the habitat of the Northern Goshawk's prey—concluding that although altering the post-fire habitat "may reduce the quality of salvage units for northern goshawk foraging in the short-term," these "minor short-term reductions . . . would be minimized to some extent" by other aspects of the Project. Although Conservation Congress asserts that the USFS should have conducted more surveys and re-mapped the Northern Goshawk PACs in the Project area, it has not identified any requirements for USFS to do so.[4] Accordingly, it was not an abuse of discretion for the district court to conclude that Conservation Congress has not demonstrated a likelihood of success on its Northern Goshawk NEPA claims.[5]

**2.** The district court did not abuse its discretion in finding that the balance of the equities and the public interest favored denying the requested injunction. "[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555

---

[4] Conservation Congress also asserts that the USFS violated NEPA by failing to identify or analyze the suitability of the surrounding habitat for the Northern Goshawk and by failing to address how neighboring projects affect compliance with the LRMP's Northern Goshawk requirements. However, the record indicates that any problems in the Northern Goshawk habitat in the Cove Fire area—including the Project area and any surrounding project areas—were, again, caused by the Cove Fire and not the Project itself.

[5] We have considered the remainder of Conservation Congress's arguments regarding the first *Winter* factor, and we find them to be without merit.

U.S. at 24 (internal quotation marks omitted) (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)). They must also "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

Here, the district court found that the public's interest "in taking proactive steps to prevent treacherous road conditions caused by fire-killed trees falling on and obstructing public roads," and "in mitigating the intensity and severity of future fires" outweighs the public interests that support an injunction.

There is ample support in the record that public safety interests disfavor granting a preliminary injunction, including agency findings: (1) that "[t]here is an urgency to implement [the Project] as soon as feasible to improve public and Forest Service personnel safety"; (2) that "[r]oad maintenance activities will improve both administrative and public access, and fire responder safety"; (3) that "[g]usty winds are common in the area of the Cove Fire and could suddenly blow down many hazardous trees at one time, posing an unacceptable risk to area residents, forest workers, and visitors"; and (4) that the purposes of the Project include reducing "safety hazards . . . along high use roads," and reducing "small fire-killed trees to reduce future fuel loads."

7

These public safety interests are not clearly outweighed by the permanence of Conservation Congress's claimed injuries or the USFS's alleged failures to obey the law and to properly designate and mark trees for removal. *See League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (noting the strong public interest in mitigating hazardous road conditions and forest fires, which is given "great weight when the risk is imminent or the danger has begun").

**AFFIRMED.**