Rachel Fazio (CA Bar # 187580) Local Counsel
P.O. Box 897
Big Bear City, CA 92314
Tel:  (530) 273-9290
Fax:  (909) 906-1187
rachelmfazio@gmail.com

Elisabeth Holmes (OR Bar # 120254) *Admitted Pro Hac Vice*
Blue River Law, P.C.
P.O. Box 293
Eugene, OR  97440
Tel. (541) 870-7722
eli.blueriverlaw@gmail.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| CONSERVATION CONGRESS, a non-profit organization,<br>    Plaintiff,<br><br>vs.<br><br>UNITED STATES FOREST SERVICE,<br>    Defendant. | Case No.: 2:18-cv-02404-JAM-CKD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S DECLARATIONS**<br><br>(Administrative Procedure Act, 5 U.S.C. § 701 *et seq*.) |

| Hearing Date: | July 30, 2019 |
|---|---|
| Time: | 1:30 p.m. |
| Courtroom: | 6 (14th Floor) Sacramento |
| Action Filed: | August 31, 2018 |

## I. INTRODUCTION AND BACKGROUND

To accommodate Defendant's last-minute notice of deposition, Plaintiff filed the declarations and exhibits[1] of Denise Boggs, Lyle Lewis, Douglas Bevington, Chad Hanson, and Kyle Haines solely to establish Conservation Congress' standing in advance of the previously-agreed upon date for submitting declarations. Defendant throws a panoply of unsustainable

---

[1] Standing declarants' exhibits are properly authenticated under Fed. R. Evid. 901 and noted as such in their declarations.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S DECLARATIONS -** 1

arguments at Plaintiff's standing declarants' statements in its Motion to Strike Portions of Plaintiff's Standing Declarations (ECF No. 83), none of which stick.

## II. LEGAL BACKROUND

Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992) (citation omitted). For the Court to find standing, Plaintiff need only provide one standing declaration. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975); *Rumsfeld v. Forum for Acad. & Inst. Rights*, 547 U.S. 47, 52, n. 2 (2006) (explaining that "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement" and thus a court need "not determine whether the other plaintiffs have standing."). It is not necessary for all plaintiffs to have standing, as long as at least one plaintiff has standing. *Massachusetts v. EPA*, 549 U.S. 497, 518, 127 S. Ct. 1438 (2007); *see also Clinton v. City of New York*, 524 U.S. 417 (1998) (same); *Watt v. Energy Educational Foundation*, 454 U.S. 151, 160 (1981) (same); *Oregon Advocacy Ctr v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003); *Jones v. City of Los Angeles*, 444 F.3d 1118, 1130 (9th Cir. 2006); *Public Lands for People v. Dept. of Agriculture*, 697 F.3d 1192 (2012), cert denied, 133 S. Ct. 1464 (2013).

In record review cases, the general rule that a party cannot supplement the administrative record when appealing an agency decision does not apply to extra-record materials submitted to demonstrate that a party has standing to seek relief in federal court. *See NW Envtl. Def. Ctr. ("NEDC") v. Bonneville Power Admin.*, 117 F.3d 1520, 1527-28 (9th Cir. 1997) (supplemental affidavits to show standing permissible in a NEPA case). The Ninth Circuit has held that "[w]here specific facts must be presented in the form of affidavits or other evidence to establish standing, the court will take these facts to be true for the purposes of a summary judgment motion." *Nat. Res. Def. Council, Inc. ("NRDC") v. U.S. Forest Serv.*, 634 F.Supp.2d 1045, 1052-53 (9th Cir. 2007) (citing *Lujan*, 504 U.S. at 561); *NEDC*, 117 F.3d at 1528.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S DECLARATIONS -** 2

## III. ARGUMENT

Through its Motion to Strike Portions of Plaintiff's Standing Declarations (the "Motion"), Defendant attempts to undercut the strength of Plaintiff's standing with unfounded arguments. Plaintiff's Opposition to the Motion to Strike focuses on how erroneous and misguided Defendant's arguments are as to the issues of (A) timeliness, (B) conflating the administrative record with standing, and (C) "evidentiary" statements and page limits.

### A. Timeliness argument is baseless

More than 8 months ago Defendant agreed in a Joint Status Report that Plaintiff would simultaneously file declarations in support of its motion for summary judgment *and* could again file declarations with its combined opposition and reply. *See* ECF No. 36 at 3 (Nov. 9, 2018) ("Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Reply in Support of its Motion for Summary Judgment, and Declarations, if any."). Standing declarations can be filed at any time before the district court enters judgment. *See Summers v. Earth Island Institute*, 555 U.S. 488, n. 2 (2009). Here, as a special accommodation to Defendant, and to quell an eleventh-hour notice of deposition, Plaintiff filed standing declarations in a timely manner and in advance of the agreed-upon date. *See* ECF Nos. 64-68, 77 (and Kyle Haines' hand-signed declarations at ECF Nos. 73 and 79). Defendant is no way prejudiced by the timing of any of the declarations' filing. Defendant had approximately 73 days between the filing of Plaintiff's standing declarations and its own summary judgment brief. Defendant had 40 days between Mr. Haines' Supplemental Declaration and its own briefing, giving Defendant more than ample opportunity to review the declarations prior to filing its own summary judgment briefing. Defendant is not prejudiced by Plaintiff's timely filed standing declarations.

### B. Standing Declarations are Independent From the Administrative Record.

For six pages of its brief, Defendant demonstrates deep confusion regarding the elementary chain of events for a NEPA lawsuit, the purpose of key documents like the administrative record,

and the role of standing declarations and the Court's subject matter jurisdiction. The Ninth Circuit has long settled that extra-record affidavits are permissible to demonstrate standing. *NEDC*, 117 F.3d at 1528. The *NEDC* case also settled the relationship between standing declarations and the administrative record. *Id.*, 117 F.3d at 1527-28; *see also NRDC*, 634 F.Supp.2d at 1052-53. Plaintiff here makes a similar arguments: the declarations and exhibits of Denise Boggs (ECF No. 66) ("Boggs Decl."), Lyle Lewis (ECF No. 65) ("Lewis Decl."), Douglas Bevington (ECF No. 67) ("Bevington Decl."), Chad Hanson (ECF No. 68) ("Hanson Decl."), and Kyle Haines (first and supplemental) (ECF No. 65 and 77) ("Haines Decl. and "Haines Supp. Decl.", respectively) have been submitted to the Court solely to establish standing of themselves as members of Conservation Congress, and for the organization Conservation Congress as Plaintiff. *See also Ecological Rights Foundation v. Fed. Emerg. Mgmt. Agency*, 2019 WL 2124337, at * 5 (N.D. Cal. May 15, 2019) (Courts consider standing declarations for standing only, not as to its review of the merits of agency action challenged by a plaintiff).

   As Defendant well knows, standing declarations are not submitted to the agency during the NEPA process, thus are not part of the administrative record (contrary to Defendant's off-base complaint that the declarations "do not appear in the Administrative Record for this litigation and, in fact, post-date the relevant decision at issue…" ECF No. 83-1 at 5), The Administrative Record is prepared by the Defendant to try to meet its burden that it complied with the law.

   Extra-record affidavits are admissible for the purpose of determining whether plaintiffs have standing to sue. *NEDC*, 117 F.3d at 1528. Standing declaration statements should not be looked at in "isolation". *See ForestKeeper*, 50 F.Supp.3d 1371, 1379-80 (E.D. Cal. 2014) (statements that limiting the project scope harmed standee allowable to show harm, and statements going to procedural irregularities legitimate to show organizational harm). The Ninth Circuit has accepted standing declarations and attached exhibits for standing purposes, and is able to decline to rely on them to support other arguments. *See NRDC*, 634 F.Supp.2d at 1053. The scope of what

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S DECLARATIONS - 4**

standees may discuss in their declarations is relatively broad. For example, in *ForestKeeper v. Elliott*, the court found that descriptions of Forest Service interactions with standees, not receiving timely information or environmental effects information was permissible in standing declarations to support standing. *See ForestKeeper*, 50 F.Supp.3d at 1380. Many of Defendant's challenges fall in this category. *See, e.g.*, Defs. Br. at 8 (challenging Boggs Decl. ¶¶ 30-58, Exs. 2-4); *see also* Boggs Decl. Ex. 1 (SOPA procedural irregularity); Haines Decl. ¶ 39.

It is permissible to submit statements that critique the merits of the agency's plan and decision, as they are here submitted solely to demonstrate how standing declarants are harmed by the Cove Project unless they obtain relief from the Court. *See, e.g,* Boggs Decl. ¶¶ 59-105; Bevington Decl. ¶¶ 23-26 and Ex. 1; Hanson Decl. ¶¶ 15-19 and Ex. 2; Lewis Decl. ¶¶ 19-20 and ¶¶ 23-30; Haines Decl. ¶¶ 27-30, 32-33. This information is also amplified by the standees' statements regarding their visits to the Cove Project area. *See, e.g.*, Boggs Decl. ¶ 21-29; Bevington Decl. ¶¶ 13-14, 18-19, 23-27 and Ex. 1; Hanson Decl. ¶¶ 13, 15-18, and Ex. 2; Haines Supp. Decl. ¶¶ 1-10 and Ex. 1-12.

Some specific examples include the following:

| Standing Declaration | Language Challenged by Defendant | Plaintiff's Response |
|---|---|---|
| Boggs ¶ 70 | "I don't understand why the MNF chose here to use a document that is 14 years older for a different region than newer management recommendations specific to NE California. In my opinion this is arbitrary and capricious." | Her statements as to the documents MNF used in its decision-making directly relate to how Conservation Congress and Ms. Boggs are harmed by the Defendant's actions under NEPA and NFMA. |
| Boggs ¶ 77 | "This [quoted Forest Plan standard] can't be achieved if the Forest Service is not conducting appropriate protocol surveys, and since an 'unidentified' raptor was flushed from the Dutch Flat PAC territory, a goshawk could still be using it." | Statements go directly to how Conservation Congress and Ms. Boggs are harmed under NEPA and NFMA by the Defendant's actions, namely as to failure to disclose information to the public and to demonstrate and explain its Project analysis under NEPA. |
| Lewis ¶ 30 | "There is no upward diameter limit on the Cove Fire Project protecting the largest and most fire-tolerant trees. I also understand that the | Statement goes directly to how Mr. Lewis as a Conservation Congress member is harmed under NEPA and NFMA by the Defendant's actions, |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S DECLARATIONS - 5**

| | | |
|---|---|---|
| | Forest Service 'abandoned' its own tree removal guidelines; the criteria then for tree removal is likely based on commercial felling and removal criteria . . . ." | namely the issue of whether the agency adequately considered the removal of large, mature trees and what mitigation measure for the Cove Project the Defendant selected. |
| Hanson Exhibit 2 | Various extra-record photographs, purportedly of the Project area | Mr. Hanson properly authenticated and laid a foundation for his photographs under Fed. R. Evid. 901 ("During my visit, I took some photographs where are true and accurate copies of what I witnessed during my visit. They are attached as Exhibit 2.") Hanson Decl. at ¶ 18 (ECF No. 68). |
| Haines ¶ 39 | [T]he Modoc National Forest's Schedule of Proposed Actions (SOPA) never referenced the Cove Fire Project until after the scoping process had begun and ended . . . ." | Statement goes directly to how Mr. Haines as a Conservation Congress member is harmed under NEPA and NFMA by the Defendant's actions, namely as to failure to notify the public of the Cove Project and the opportunity to submit public comments on the scoping process. As he stated in his Declaration, since 2009 he submits comments on projects, and he depends on Plaintiff to inform him of project so that he can participate in the public processes he is entitled to. Haines Decl. at ¶¶ 37-39 (ECF No. 73). |
| Haines Supp. Decl. in its entirety and Exhibits 1-12 | Defendant did not provide any specificity of challenge | Plaintiff outlined its response to any timeliness objections *supra*. Mr. Haines stated facts based on his personal knowledge. Fed. R. Evid. 602. Mr. Haines properly authenticated and laid a foundation for his photographs under Fed. R. Evid. 901 ("I am attaching as exhibits true and accurate copies of photographs that I took during my April 15, 2019 visit to the Project…") Haines Suppl. Decl. at ¶ 9 (ECF No. 79). |

**C. Administrative Record Exception Rule Does Not Apply**

As the declarations are submitted for standing purposes, the four-part administrative record exception rule of *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988), *amended* 867 F.2d 1244 (9th Cir. 1989) should not need to apply. Nor was Plaintiff required to move the

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S DECLARATIONS - 6**

court for relief to supplement the administrative record or to file standing declarations, unlike Defendant claims. Def. Mtn. at 6. The *Hodel* test also should not apply here because the elements of the *Hodel* test clearly focus on elucidating the agency's actions for the Court, not to demonstrate Plaintiff's Article III standing. Defendant acknowledges as much ("the first factor … applies only to the *agency's* use of extra-record information, which by definition does not apply to the Plaintiff's declarations at issue."). ECF No. 83-1 at 7.

However, in the alternative, should this Court decide to apply the *Hodel* rule, it may inquire outside the record when (1) supplementation is necessary to determine if the agency has considered all factors and explained its decision; (2) the agency relied on documents not in the record; (3) supplementation is needed to explain technical terms or complex subjects; or (4) plaintiffs have shown bad faith on the part of the agency. *See San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 606 (9th Cir. 2014); *Lands Council v. Powell*, 395 F.3d 1019 at 1030 (9th Cir. 2005). Here, the standing declarations confirm that the agency has not considered all the factors, and further explanation is necessary for the public to understand and get proper disclosure of agency information under NEPA. If persons with the experience of the standing declarants in this matter have difficulty understanding the Defendant's decision, less experienced members of the public are likely even more challenged with understanding the Project, and supplementation would be necessary under exceptions (1) and (3). Indeed, Mr. Christoffersen admitted some Cove Project documents were "confusing" and noted errors. *See* Chris Christoffersen Decl. (ECF No. 82-2) at ¶¶ 4, 6, 21. Additionally, to the extent the standing declarants identify records the agency relied on but did not include in the record (e.g., Boggs Decl. Ex. 1 (SOPA), 5 (Pit RCD agreement)), those records and associated testimony would be admissible under exemption (2). However, as Plaintiff argues above, caselaw already permits admission of the standing declarants' statements without an application of *Hodel*.

**D. Defendant's Evidentiary and Page Limit Arguments are Baseless**

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S DECLARATIONS - 7**

### 1. Evidentiary Arguments

Defendant asserts in its Motion, without any foundation or explanation or legal authority, that portions of Plaintiff's standing declarations are argumentative and should be stricken. Def. Br. at 10-11. As discussed above, the statements in Plaintiff's declarations go to standing and each declarant's injury, causation, and redressibility showings; not to the merits of Conservation Congress' NEPA, NFMA, and APA lawsuit. However, what Defendant fails to distinguish is that similar facts may demonstrate NEPA or NFMA violations and *also* demonstrate the standees' injury, causation, and redressibility. These facts thus go directly to Conservation Congress' right to sue, and to the Court's subject matter jurisdiction over the case. If the standees had not specifically identified the ways the Cove Project harms them, they risked the Court not being able to hear the case. That Defendant finds the statements "argumentative" does not mean they are inadmissible for standing purposes. *See, e.g., U.S. v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 66, n. 14 (1973) (a "trifle is enough for standing to fight out a question of principle."). Nor do the standees ask the Court to "extract" information from the declarations for consideration on the merits. *Cf. Cons. Cong. v. Heywood*, 2015 WL 5255346, at * 8 (E.D. Cal. Sept. 9, 2015). Nor do the standees present the declarations as evidentiary support for the merits of Plaintiff's claims as to whether or not Defendant violated the law, or as expert testimony challenging the merits of Defendant's decision. *Compare Env. Def. Fund v. Costle*, 657 F.2d 275, 286 (D.C. Cir. 1981); *Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Engineers*, 817 F.Supp.2d 1290 1301 (D. Or. 2011). Indeed, Plaintiff submits the standing declarations to show injury, causation, and redressibility.

Lastly, statements in Plaintiff's standing declarations satisfy Fed. R. Evid. 401 and 402 relevancy and reliability requirements <u>as it relates to the Court's authority to find standing and subject matter jurisdiction</u>, and evidence as to Plaintiff's standing should not be excluded. Nor should it be excluded under Fed. R. Evid. 403 as the statements go to standing, not the merits.

### 2.      Declaration Length

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S DECLARATIONS -** 8

Contrary to Defendant's argument, there was no intent to attempt at an "end run" around the Court's page limit requirements. Def. Br. at 10. Te length of the standing declarants' statements was a direct result of Defendant's highly unusual threats to depose Plaintiff's standing declarants in this NEPA and NFMA case that hinges on whether Defendant violated the law. The general rule is "that agency actions are to be judged on the agency record alone, without discovery." *Public Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 1982). Plaintiff's standing declarants are located in multiple locations across the West, have other personal and professional responsibilities, and responded to Defendant's inquiries and the Court's subject matter jurisdiction requirements in a less burdensome and less costly form than depositions. The Federal Rules of Civil Procedure support this approach. *See* Fed. R. Civ. P. 26(b)(1). They also did so on an expedited basis to respond to Defendant's deposition inquiries.

Defendant's reference to this Court's Minute Order in *U.S. v. Sierra Pac. Indus.*, No. 2:09-cv-02445-JAM-EFB (E.D. Cal. Dec. 1, 2010) (ECF No. 108) to support Defendant's Motion to Strike is misleading and inapposite. Def. Br. at 11, lines 7-12. In that case, Mr. Schaps filed a declaration in support of a motion for reconsideration, as he was expressly directed to do by this Court, and to do so within specific parameters defined by the Order. *SPI*, ECF No. 108. Here, Plaintiff's standing declarations focus on the key elements of standing: injury, causation, and redressibility. *See, e.g., Lujan*, 504 U.S. at 560. That this required length is a result of the standing declarants' respective backgrounds in public advocacy on timber issues, work with NEPA processes as public advocates, knowledge of different forest plan requirements that must be satisfied by federal agency actions, and familiarity with the Project area. *See, e.g.*, Lewis Decl. ¶ 4-6 (worked with U.S. Fish and Wildlife Service and Bureau of Land Management for 34 years); ¶ 8 (recreating on the Modoc since he was a child); Haines Decl. ¶ 9 (traveled throughout the Modoc since 1994), ¶¶13-16 (involvement with public notice and comment activities); Boggs Decl. ¶¶ 10,

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S DECLARATIONS - 9**

30- 38 (Conservation Congress public comment work), ¶ 8 (over 30 years experience in wildlife ecosystem protection), ¶ 11 (15 years of timber sale lawsuit experience).

Additionally, as alleged in the Complaint, Defendant's alleged failures to satisfy NEPA and NFMA go directly to harming Plaintiff and its members' interests, and to Plaintiff's standing. *See* ECF No. 48 (First Amended Complaint). Standing declarants' interests are also stated in their declarations and standing declarants explain why those interests are important to them, but challenged by Defendant. *See, e.g.*, Bevington Decl. ¶ 14 (values post-fire habitat), ¶ 16 (values special aspects of the Modoc National Forest); Hanson Decl. ¶¶ 9-11 (fascinated by post-fire habitat and Northern Goshawk use); Lewis Decl. ¶¶ 9, 11-20 (explaining why the Cove Fire Project area is special to him); Haines Decl. ¶¶ 21-25, 27-30 (values based on his experiences); Thus it is completely appropriate for Plaintiff's standing declarants to identify and describe for the Court how they satisfy Article III's case-or-controversy requirements.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Strike Portions of Plaintiff's Declarations, and admit Plaintiff's standing declarations in full for the purpose of demonstrating that this Court has subject matter jurisdiction over this case.

Respectfully submitted this 1st day of July, 2019.

        *s/ Rachel Fazio*
        (as authorized 7/1/19)
        RACHEL FAZIO

        *s/ Elisabeth A. Holmes*
        ELISABETH A. HOLMES
        *Pro hac vice*

        Attorneys for Plaintiff

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S DECLARATIONS -** 10

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2019, I filed the foregoing document electronically through the Court's CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*s/ Elisabeth A. Holmes*
Elisabeth A. Holmes
Blue River Law, P.C.
Counsel for Plaintiff

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S DECLARATIONS -** 11